**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CHRISTOPHER MAIKE, | : | |
| Plaintiff, | : | Case No. 3:14cv00228 |
| vs. | : | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | : | Chief Magistrate Judge Sharon L. Ovington |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. Introduction

Plaintiff Christopher Maike brings this case challenging the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB). He asserts here, as he did before the administration, that he has been under a benefits-qualifying disability – starting on June 8, 2008 – due to numerous mental and physical impairments, including anxiety, depression, sleep apnea, chronic migraine headaches, kidney stones, left shoulder replacement, degenerative disc disease of cervical spine, chronic sinusitis, shingles, and sciatica. (*PageID#* 275).

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc.

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

#9), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), the administrative record (Doc. #8), and the record as a whole.

## II. **Background**

### A. **Plaintiff's Testimony**

Plaintiff was 40 years old on his alleged disability onset date, placing him in the category of a "younger person" for purposes of resolving his claim for DIB. *See* 20 C.F.R. § 404.1563(c). He has a high-school education. No finding was made regarding Plaintiff's past relevant work experience. (Doc. #9, *PageID#* 1830).

At his administrative hearing in January 2014, Plaintiff testified that he graduated from high school and completed a few years of college. (*PageID#* 104). He is approximately 5' 8" tall and weighs about 205 pounds. After leaving the military in November 2011, Plaintiff first tried working at a large home improvement store as a member of the "stock recovery team." (*PageID#* 105). He testified, "I attempted to do that job but was unable to perform the lifting and the requirements that the job demanded due to daily pain and I asked for an accommodation to go back to a sales position and was denied to the fact that it was a seasonal position." (*Id.*). He believes he would have been able to do the job at that time if it was a light sales position job. (*Id.*). Plaintiff later found a new job working at a firearms counter. He was initially upbeat about this position because he did not have to sit for prolonged periods or lift heavy weights. He first started working approximately 32 hours per week but when he quit due to pain he was down to working only 15 hours per week. (*PageID#* 106). Plaintiff worked in this position for 16

months, from June 2012 to October 2013. (*Id.*). His employer provided him with certain accommodations, such as allowing him not to do any heavy lifting. He only lifted up to 5 pounds, or "about the weight of a gun." (*PageID#* 107).

During the hearing, Plaintiff also discussed the last few years while he was in the military, stating the following:

> I was not able to perform the duties that I had prior performed. I was not combat ready. I missed a lot of work due to the pain and the headaches and the daily issues of having the pain which in turn does not go well with a military career. My position was a high demand, basically a single position where due to security clearances no one else could, or very few other people could do my job simply for the fact of the requirements of the security stuff. So therefore it put strain on the team and on myself and on my work performance and longevity or endurance.

(*PageID#* 108). Plaintiff indicated that most of his work involved military administrative duties and was mentally stressful. (*Id.*).

At the time of the hearing, Plaintiff was not working at all. He testified he wakes up daily with chronic pain and it takes a few hours "to get the fog off," as he calls it. (*PageID#* 108). From that point, Plaintiff has either good days or bad days. On a bad day, Plaintiff ends with a migraine-type headache requiring him to "sleep it off" and precluding him from being productive. This happens approximately 10 to 20 times per month.

Plaintiff also suffers from mental impairments, namely depression and anxiety. Plaintiff stated, "[t]he emotions and depression affect my tense[ness] or my stress which is the main, one of the main contributors for my migraines which continues on and causes other medical issues . . . ." (*PageID#* 112).

Due to the daily pain he experiences, Plaintiff can no longer hunt, fish, or do other

outdoor activities he used to enjoy. He testified his migraine headaches have increased in frequency over the past few years and he has tried numerous treatments to improve his multiple ailments. For example, Plaintiff stated, "[s]ince the onset of the injury and subsequently getting the myofascial pain and daily headaches I've truly tried to exhaust every avenue there is to try to break this cycle of pain from holistic type medicines, acupuncture, needling, message therapy, physical therapy stuff to procedures including denervations and trigger point, joint injections as well as medicines. What I've come to the conclusion is it's a combination of all those at any one time to try to limit this disease or limit this pain so I can be productive. . . ." (*PageID#* 115).

### B. Medical Evidence

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

## III. "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term

"disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.*, "substantial gainful activity," in Social Security lexicon.[2] 42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Christopher L. Dillon applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "migraines, hypertension, obesity, chronic pain disorder, affective disorder, cervical spine disorder, left shoulder disorder, and carpal tunnel syndrome." (*PageID#* 77).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listings 1.00, 1.04, 1.02, 11.00, 11.14, 4.00, 12.00, and 12.04. (*PageID#* 79-81).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

capacity[3]:

> for work that involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; standing and/or walking for a total of no more than 2 hours per workday; sitting for a total of 6 hours; no climbing of ropes, ladders, scaffolding; no more than occasional ability to perform all other postural activity; no more than frequent handling and fingering; no more than frequent reaching with the non-dominant left upper extremity; no reaching above shoulder level; no exposure to hazards, such as moving machinery and unprotected heights; no operation of a commercial vehicle; no more than occasional exposure to environmental extremes, such as dust, gas, fumes, heat, cold, humidity; no more than frequent interaction with supervisors, coworkers, and the public; and no more than simple, routine, repetitive tasks.

(*PageID#* 81). The ALJ also concluded at Step 4 that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*PageID#* 82).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV. <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

---

[3] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V. <u>Discussion</u>

**A. Plaintiff's Contentions**

Plaintiff contends the ALJ did not properly weigh the treating medical source opinions, specifically as to his treating neurologist, Michelle Noel, D.O., treating pain specialist, Judith O'Connell, D.O., treating physical therapist, Travis Tidwell, PT, DPT. Plaintiff also argues the ALJ's findings regarding his credibility are not supported by substantial evidence. (Docs. ## 9 and 13).

**B. Treating Medical Source Opinions**

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875–76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson*, 378 at 544. "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley*, 582

F.3d at 406, quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). A treating physician's opinion can be discounted if: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 404.1527(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record. *Wilson*, 378 F.3d at 546.

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### C. <u>Analysis</u>

#### 1. Dr. Noel's and Dr. O'Connell's opinions

The record contains Dr. Noel's treatment notes from Plaintiff's visits to the Dayton Center for Neurological Disorders from February 2012 to at least June 2013. (*PageID##* 520-50). During this period, Plaintiff was treated for migraine headaches, myofascial pain, and cervicogenic headaches. (*Id.*). Dr. Noel assessed chronic migraine headache with analgesic overuse, obstructive sleep apnea, obesity, chronic myofascial pain, and

carpal tunnel. (*PageID#* 550). On June 5, 2013, Dr. Noel opined that Plaintiff has a medical condition that would benefit from a 20-hour workweek, on consecutive days. (*PageID#* 1503).

Plaintiff also treated with pain specialist, Dr. O'Connell, beginning in December 2011.[4] (*PageID#* 1337). Dr. O'Connell treated Plaintiff with massage therapy and medication. (*PageID##* 1340-79, 1391-1427). On June 4, 2013, Dr. O'Connell limited Plaintiff from working more than 7 hours per day or 20 hours per week, as well as from lifting more than 20 pounds repetitively. (*PageID#* 1426). She reiterated this in an undated letter addressed "to whom it may concern." (*PageID#* 1513).

When weighing the opinions of Drs. Noel and O'Connell, the ALJ assigned their conclusions "little weight" finding that they were unsupported by clinical findings, inconsistent with other record evidence, and appeared to be based on Plaintiff's subjective reports of his inability to sustain employment. (*PageID#* 87).

This assessment by the ALJ failed to apply many of the factors outlined in 20 C.F.R. § 404.1527(c)(2), including the length of the relationship; the nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant

[4] The record shows Plaintiff treated with another pain specialist, Dr. Amol Soin, from August 2012 through at least May 2013. (*PageID#* 557-78.)

to decision. The only factor the ALJ acknowledged was that Drs. Noel and O'Connell were treating physicians. (*PageID#* 86).

The ALJ, as opposed to a physician, is ultimately responsible for determining the claimant's residual functional capacity. *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 157 (6th Cir. 2009); see 20 CFR § 404.1546(c). Nonetheless, the ALJ must rely upon a medical advisor's assessment and refrain from interpreting raw medical data. *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)(citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)); *see also Hall v. Celebreeze*, 314 F.2d 686, 690 (6th Cir. 1963) (An "ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record."). Remand is proper when an ALJ's residual functional capacity assessment lacks substantial evidence. *Deskin*, 605 F.Supp.2d at 911-13.

A review of the record indicates substantial evidence does not support the ALJ's finding that Drs. Noel and O'Connell's opinions are inconsistent with the record or unsupported by objective medical evidence. There are over 1,400 pages of treatment notes, spanning more than 5 years, consistently documenting Plaintiff's severe physical pain. (*PageID##* 359-1828). These notes also specify clinical signs and symptoms which support such findings. For example, Plaintiff reported to Dr. Noel that he has been experiencing chronic headaches since 2009, with no improvement despite taking Topamax and using a CPAP machine. (*PageID#* 532). Plaintiff also demonstrated decreased sensation and temperature of his right upper and lower extremities, as well as decreased

vibration of his hands. (*PageID#* 533). An August 30, 2012, EMG demonstrated carpal tunnel syndrome. (*PageID#* 529). In September 2012, Plaintiff reported being "cautiously optimistic" that botox may be helping his migraines. (*PageID#* 524). He was also still receiving trigger point injections at that time. (*Id.*). Dr. O'Connell's treatment notes show Plaintiff had moderate stiffness in his neck and thoracic muscles; moderate tenderness of the muscles of the neck and thoracic paravertebral muscles; moderate stiffness of the cervical spine; reduced range of motion of the left shoulder; crepitation of the left shoulder; scoliosis; and a higher shoulder on the right. (*PageID##* 1342-71). An October 2008 MRI of Plaintiff's shoulder showed no tear but it did indicate "type II acromion with mild degenerative changes of the acromioclavicular joint…[and] mild subacromial/subdeltoid bursitis." (*PageID##* 1235-36). A May 29, 2012 cervical spine MRI demonstrated mild degenerative disease at C6-7 and C5-6, as well as mild sporadic neural foraminal narrowing. (*PageID##* 635-36). A December 31, 2012 EMG was consistent with bilateral carpal tunnel. (*PageID##* 725-26).

Drs. Noel and O'Connell's opinions are that of medical professionals and treating sources, are based upon a substantial number of consistent treatment notes spread over a significant period of time, and identify specific signs and symptoms which support their opinions. Accordingly, the ALJ's decision to give little weight to the opinions of Drs. Noel and O'Connell is unreasonable and unsupported by the evidence.

**2. Dr. Tidwell's opinion**

On August 27, 2013, Plaintiff began treating with Dr. Tidwell, a doctor of physical

therapy. Dr. Tidwell treated Plaintiff 3 days per week with physical therapy, trigger point dry needling, ultrasounds, electric stimulation, hot/cold packs, and mechanical traction. (*PageID##* 1564-1620). On September 30, 2013, Dr. Tidwell completed a work excuse statement requesting that Plaintiff be excused from work. (*PageID#* 1512). The ALJ gave this statement "little weight," finding "[t]his statement relates only to September 30, 2013, and does not provide any guidance about the claimant's ability to work after that date." (*PageID#* 87).

On December 9, 2013, Dr. Tidwell completed interrogatories in which he opined that Plaintiff's chronic pain syndrome has led to intense headaches, cervical pain, and poor bilateral shoulder strength. Plaintiff's impairments also were noted to have led to increased cervical pain and headaches with lifting and activities of daily living, secondary to muscle weakness. (*PageID#* 1504). According to Dr. Tidwell, Plaintiff would be unable to do the following: be prompt and regular in attendance; withstand the pressures of meeting normal standards of work productivity and work accuracy without significant risk of physical or psychological decompensation or worsening of physical and mental impairments; complete a normal workday or workweek without interruptions from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods. (*PageID##* 1505-06). Dr. Tidwell believed Plaintiff could occasionally lift 5 pounds and frequently lift/carry less than 2 pounds. He could stand/walk for 2 hours out of 8 and uninterrupted for 1 hour. Prolonged walking and standing were noted to cause pain. (*PageID#* 1507). Plaintiff

could sit for 4 hours out of 8 and 1 to 2 hours uninterrupted. He could occasionally climb, stoop, crouch, and kneel. He could never crawl. (*PageID#* 1508). Dr. Tidwell also found that Plaintiff's ability to reach, handle, and push/pull was restricted. (*PageID#* 1509). He could perform only sedentary work. (*PageID#* 1511).

The ALJ gave similar treatment to the opinion of treating source Dr. Tidwell as he did to the opinions of Drs. Noel and O'Connell. For example, the ALJ gave Dr. Tidwell's December 2013 assessment "little weight," finding merely that "[n]ot only are Dr. Tidwell's reports internally inconsistent, there is no evidence supporting such extreme limitations, including the ability to lift only five pounds and to sit for less than four hours per day." (*PageID#* 87). Contrary to the ALJ's findings, however, Dr. Tidwell's opinion was not inconsistent as to his definition of sedentary work, which the ALJ also found Plaintiff could perform. Although Dr. Tidwell essentially opined that Plaintiff would be unemployable, he also described Plaintiff's functional limitations, as well as the physical findings which he found on clinical exams. (*PageID##* 1504-11). Nonetheless, the ALJ failed to consider these factors when he determined that Dr. Tidwell's opinion was not entitled to controlling or even deferential weight.

The ALJ's reasoning for his refusal to give controlling or significant weight to the opinions of Plaintiff's treating doctors is therefore deficient. In each instance, the ALJ's lack of deference to Plaintiff's treating doctor stems from a conflict between the doctor's interpretation of medical evidence, and the ALJ's interpretation of the same evidence. As previously noted, the ALJ is simply not at liberty to substitute his own judgment for that of

a physician without relying on some other objective evidence. *Hall*, 314 F.2d at 690; *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x. 181, 194 (6th Cir. 2009). As the record lacks substantial evidence to support the ALJ's conclusions, the Court finds the ALJ failed to properly consider the opinions of Plaintiff's treating physicians.[5]

## VI. REMAND IS WARRANTED

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand is warranted for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

---

[5]In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contention regarding credibility is unwarranted.

under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Christopher Maike was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the

Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

April 29, 2015

s/Sharon L. Ovington
Sharon L. Ovington
Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).